IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

PHILADELPHIA INDEMNITY INSURANCE
COMPANY,

                                        Plaintiff,

                    v.

TRANSIT U, INC.; JOLLY TROLLEY
TRANSPORTATION SERVICE, LLC; JOLLY
TROLLEY LIMOUSINE SERVICE, LLC; JOLLY
TROLLEY SCHOOL BUS, LLC; DAVID O.
HASTINGS; CHRISTINE D. HASTINGS;
WILLIAM HASTINGS; DAVID T. HASTINGS;
THOMAS DOWD; AND NATIONAL
INDEMNITY COMPANY,

                                        Defendants.

Civil Action No. 20-01216-RGA

## MEMORANDUM OPINION

Bruce W. McCullough, BODELL BOVE, LLC, Wilmington, DE; Ronald P. Schiller, Matthew N. Klebanoff, Daniel P. Kaufman, HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER; Philadelphia, PA,

Attorneys for Plaintiff.

David J. Soldo, Damon B. Ferrara, MORRIS JAMES LLP, Wilmington, DE,

Attorneys for Defendant National Indemnity Co.

Daniel P. Bennett, MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS, LLP, Wilmington, DE,

Attorney for All Other Defendants.

July *22*, 2021

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is Defendant National Indemnity Company's Motion to Dismiss, or in the Alternative, to Stay Plaintiff's claims for failure to state a claim as well as Defendants Transit U., Inc., Jolly Trolley Transportation Service, LLC, Jolly Trolley Limousine Service, LLC, Jolly Trolley School Bus, LLC, David O. Hastings, Christine D. Hastings, William Hastings, D. Turner Hastings, and Thomas Dowd's Motion to Stay Proceedings. (D.I. 30, 34). The motions were fully briefed. (D.I. 31, 36, 37, 39, 40, 41).

## I.    BACKGROUND

In October 2016, a truck towing a homemade trailer overturned and injured twenty-six of the passengers. (D.I. 1 at ¶ 46; D.I. 31 at 6). The vehicles and driver had been hired to transport passengers from Dewey Beach, Delaware to the Indian River Life Saving Station, also located in Delaware. (D.I. 1 at ¶ 45). Two actions by injured passengers were filed in the Superior Court of Delaware (Kent County) against Defendants Jolly Trolley Transportation Service, LLC ("Transport"), Transit U, Inc. ("Transit"), Jolly Trolley Limousine Service, LLC ("Limo"), Jolly Trolley School Bus, LLC ("Bus"), Thomas Dowd, an employee of Transit and the driver of the vehicles at issue, and the individuals that owned these companies: David O., Christine, William, and David T. Hastings (the "Hastings"). (D.I. 1 at ¶¶ 2, 50). The claims were consolidated into one action (the "State Action"). (D.I. 31 at 6).

Transport owned the truck and homemade trailer and leased them to its parent company, Transit. (D.I. 1 at ¶¶ 44, 53). Transit and Transport insured the vehicles with a commercial auto policy (the "Transport Policy") issued by Defendant National Indemnity Company ("National Indemnity"). (*Id.* at ¶ 30).

Limo, a separate subsidiary of Transit, did not own, lease, or operate the vehicles involved in the accident. (*Id.* at ¶ 4). Limo maintained a different insurance policy for its vehicles (the "PIIC Policy") with Plaintiff Philadelphia Indemnity Insurance Company ("PIIC"). (*Id.* at ¶¶ 25, 29; D.I. 1, Ex. C). "Limo is listed as the 'First Named Insured'" and "Transit is listed as a 'Named Insured'" on that policy. (D.I. 1 at ¶ 25). The PIIC Policy contains an MCS-90B endorsement with a "limit of liability of $5 million," which essentially states that "PIIC will pay a final judgment against Limo involving negligence in the operation of a vehicle, regardless of whether the vehicle qualifies as a covered 'auto' in the PIIC Policy, and subject to all other terms, conditions, and requirements of the MCS-90B Endorsement." (*Id.* at ¶¶ 38-39). The MCS-90B Endorsement functions as a surety agreement and allows PIIC to recoup from Limo any amount it pays for a final judgment against Limo. (*Id.* at ¶ 43). The purpose of such an endorsement is to satisfy a motor carrier's minimum levels of financial responsibility in order to cover public liability and property damage as required by Section 18 of the Bus Regulatory Reform Act of 1982. (*Id.* at ¶¶ 32, 36) (citing 49 U.S.C. § 31138(a)(1)).

PIIC denied coverage for the accident at issue "because it did not involve automobiles covered under the policy that PIIC issued to Limo." (*Id.* at ¶ 3). Nevertheless, Plaintiff still provided a courtesy defense to Transit and Limo in the State Action subject to a full reservation of its rights, including the right to withdraw from the defense. (*Id.* at ¶¶ 3, 72). Plaintiff believed a judgment against Limo could potentially trigger its surety obligations under the MCS-90B Endorsement. (*Id.* at ¶ 3).

In August 2020, Limo's counsel planned to move for "summary judgment" seeking Limo's "dismissal" from the State Action, but Defendants' personal counsel instructed Limo's counsel not to do so. (*Id.* at ¶¶ 74, 78). Plaintiff believed that this evidenced an improper

attempt to access the surety limits of Limo's MCS-90B Endorsement even though Limo lacked involvement in the accident. (*Id.* at ¶ 79). In response, PIIC withdrew its defense of Transit on July 13, 2020. (*Id.* at ¶ 73). A few months later, the parties moved for entry of a final judgment against the defendants including Limo. (*Id.* at ¶¶ 96-99). Plaintiff filed a motion to intervene in the State Action on September 3, 2020. (D.I. 31 at 10). While that motion was under consideration, Plaintiff filed suit in this Court against Defendants Transit, Transport, Limo, Bus, the Hastings, Dowd, and National Indemnity on September 11, 2020. (D.I. 40 at 2).

Plaintiff alleges the same claims in this case as it did in the State Action except for two additional claims against National Indemnity—a party only to this case. (D.I. 1 at ¶¶ 101-156; D.I. 36, Ex. A at ¶¶ 145-187). The counts which overlap with those in the State Action are:

> (1) Alter-ego liability against the Hastings Defendants [(Count I)]; (2) Declaratory Judgment that the MCS-90B Endorsement applies only to Limo [(Count II)]; (3) Declaratory Judgment that Plaintiff has no duty to defend in the underlying lawsuits [(Count III)]; (4) Fraud against [all] defendants [except National Indemnity (Count VI)]; and (5) Tortious interference with contractual relations against the Hastings defendants [(Count VII)].

(D.I. 36 at 6). The counts unique to this case are (1) "declaratory judgment that the policies issued by National Indemnity to Transit, Transport and Bus cover the accident of up to $5 million under each policy (Count IV)" and (2) "contribution and indemnification" from National Indemnity for any judgment Plaintiff is required to pay (Count V). (D.I. 37 at 19).

National Indemnity filed a motion to dismiss Counts IV and V of Plaintiff's Complaint and, to the extent they apply to National Indemnity, Counts II and III for failure to state a claim under Rule 12(b)(6). (D.I. 34; D.I. 36 at 6-7). National Indemnity alternatively requests that this Court stay the proceedings. (D.I. 34; D.I. 36 at 9). Defendants Transit, Transport, Bus, Dowd, and the Hastings (collectively "Jolly Trolley Defendants") filed a motion to stay the proceedings pending the outcome of the State Action. (D.I. 30).

4

## II.   LEGAL STANDARD

Rule 8 requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . ." Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard.  A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the counter-complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.,* 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly,* 550 U.S. at 555).  I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002).  A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby,* 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12.  That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.*  Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In certain circumstances, a federal court may stay the proceedings.  For legal claims, federal courts "have a virtually unflagging obligation . . . to exercise the jurisdiction given them" except in certain exceptional circumstances when a parallel state court action exists.  *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *Ryan v. Johnson,* 115 F.3d 193, 195-96 (3d Cir. 1993).

For declaratory judgment claims, the standard is different.  The Declaratory Judgment Act states that "any court of the United States . . . may declare the rights of and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2202(a).  When only declaratory relief is sought, federal courts are granted more flexibility in exercising their discretion to hear the case.  *See Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-95 (1942); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).  In the Third Circuit, courts weigh various factors in determining whether to decline to hear a declaratory judgment case including:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion.

*Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 146 (3d Cir. 2014).

In a case involving both declaratory relief and legal claims, as is the case here, the Third Circuit applies the independent claim test to determine the level of discretion federal courts may exercise in declining jurisdiction.  *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 229 (3d Cir. 2017).  Under the independent claim test, "a district court must [first] determine whether the

legal claims are independent of the declaratory claims." *Id.* "Non-declaratory claims are 'independent' of a declaratory claim when they are alone sufficient to invoke the court's subject matter jurisdiction and can be adjudicated without the requested declaratory relief." *Id.* at 228 (quoting *R.R. St. & Co. v. Vulcan Materials Co.*, 569 F.3d 711, 715 (7th Cir. 2009)).

If the legal claims are not independent of the claims for declaratory relief, then the *Wilton/Brillhart* doctrine applies, and courts can use their discretion to abstain from hearing the entire case consistent with the factors listed in *Reifer*. *Rarick*, 852 F.3d at 229. If the legal claims are independent, then the *Colorado River* doctrine applies, and courts can only stay the proceedings under exceptional circumstances. *Id.* Courts consider:

> (1) [in an *in rem* case,] which court first assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether federal or state law controls; and (6) whether the state court will adequately protect the interests of the parties.

*Spring City Corp. v. American Bldgs. Co.*, 193 F.3d 165, 171, 173 (3d Cir. 1999). Applying these factors "does not rest on a mechanical checklist, but on a careful balancing of the important factors . . . as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 2 (1983). "Only the clearest of justifications will warrant dismissal." *Colorado River*, 424 U.S. at 819.

### III. DISCUSSION

#### A. National Indemnity's Motion to Dismiss or in the Alternative, to Stay

National Indemnity filed a motion to dismiss, or alternatively, to stay Plaintiff's claims against National Indemnity. (D.I. 34). Counts IV and V are directed specifically at National Indemnity. (D.I. 1 at ¶¶ 123-36). Count IV requests declaratory judgment that "National

Indemnity is liable under the Transport Policy, as required under federal and Delaware law, for

any judgment in the [State] Action because the Transport Policy covers the automobiles at issue

in the [State] Action and the Transport Policy must, as required under federal and Delaware law,

contain minimum limits of liability of $5 million." (*Id.* at ¶ 128). Count V alleges, "National

Indemnity is liable to PIIC for contributions and/or indemnification for any judgment against

[Limo] in the [State] Action that [] PIIC pays, because the Transport Policy covers the

automobiles at issue in the [State] Action." (*Id.* at ¶ 136).

### 1. National Indemnity's Argument that Plaintiff's Claims Fail for Lack of Ripeness

National Indemnity argues that Plaintiff's claims against it are not ripe and that Plaintiff

is seeking an advisory opinion. (D.I. 36 at 18). National Indemnity argues that in Delaware,

claims are not ripe until there is "a reasonable likelihood that coverage under the disputed polices

will be triggered." (*Id.*) (quoting *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208,

1218 (Del. 2014)). A dispute is not ripe when a claim is based on "uncertain and contingent

events" or where "'future events may obviate the need' for judicial intervention." (*Id.*). National

Indemnity argues that Plaintiff's claims against it are contingent on whether Plaintiff will have

any liability to cover the accident in the first place pursuant to its other claims. (*Id.*). So far,

"Plaintiff has paid no money under the policy provisions at issue, and Plaintiff is not under any

judicial order that it must pay." (*Id.*)

Plaintiff argues that National Indemnity incorrectly applies Delaware law to federal

justiciability issues. (D.I. 39 at 20) (citing *Fed. Kemper Ins. Co. v. Rauscher,* 807 F.2d 345, 352

(3d Cir. 1986)). Even under this erroneous standard, Plaintiff maintains that its claims are non-

hypothetical, and thus ripe, because the "State Plaintiffs (1) have a present right to sue PIIC

under the MCS-90B Endorsement to satisfy judgments in the State Action and (2) have an

assignment from the State Defendants of their rights, if any, under the PIIC Policy to pursue PIIC." *Id.*

Plaintiff argues that under federal law, "the Third Circuit uses a three part test to determine whether claims are ripe for judicial review: '1) the parties must have adverse legal interests; (2) the facts must be sufficiently concrete to allow for a conclusive legal judgment, and (3) the judgment must be useful to the parties.'" (*Id.* at 20-21) (quoting *Aaron Enterprises, Inc. v. Fed. Ins. Co.*, 415 F. Supp. 3d 595, 600 (E.D. Pa. 2019)). First, Plaintiff argues that the Parties' interests are adverse because National Indemnity opposes their request to apply "federal and Delaware law concerning minimum financial responsibility requirements [] to the National Indemnity Policies . . ." (*Id.* at 21). Second, Plaintiff claims the facts are sufficiently concrete to allow for a conclusive judgment because they "involve a legal interpretation of federal law applied to the insurance policies at issue." (*Id.*). Third, Plaintiff argues that a judgment would be useful "since it would help PIIC and National Indemnity determine their rights and obligations with respect to the State Action." (*Id.*).

I agree with Plaintiff that federal justiciability law applies. *See Fed. Kemper Ins. Co.*, 807 F.2d at 352. Under the first prong of the three-part test, courts consider whether "the claim involves uncertain and contingent events, or presents a real and substantial threat of harm" to determine the adversity of the parties' interests. *NE Hub Partners v. CNG Transmission Corp.*, 239 F.3d 333, 342 n.9 (3d Cir. 2001). "It is not necessary for the party seeking review to have suffered a completed harm in order to establish adversity of interest so long as there is a substantial threat of real harm that remains throughout the course of the litigation." *Surrick v. Killion*, 449 F.3d 520, 527 (3d Cir. 2006). Plaintiff faces a substantial threat of real harm because judgments have been entered in the State Action against Jolly Trolley Defendants, and

the Jolly Trolley Defendants have assigned their rights to the State Action plaintiffs, which give the State Action plaintiffs a current right to sue Plaintiff under the MCS-90B endorsement to satisfy the judgment against Limo. (D.I. 39 at 20).

Under the second prong of the test, the facts are also sufficiently concrete to allow for a conclusive legal judgment. The dispute must be based on a "real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aaron Enterprises*, 415 F. Supp. 3d at 602. Plaintiff seeks a determination of whether the Transport Policy must contain minimum limits of liability at $5 million under federal or state law. (D.I. 1 at ¶ 126). These are not hypothetical insurance contracts, and therefore, a declaratory judgment on this issue would not be an advisory opinion because it would help establish the actual coverage obligations of the insurers in this case.

Under the third prong of the test, the judgment must be useful to the parties. "A judgment should 'affect the parties' plans of actions by alleviating legal uncertainty." *Aaron Enterprises*, 415 F. Supp. 3d at 601 (citing *Surrick*, 339 F.3d at 529). A declaratory judgment as to whether insurers of motor carriers must provide minimum levels of financial responsibility would serve a useful purpose by establishing the insurers' coverage obligations and alleviating legal uncertainty. Plaintiff's claim satisfies the three-part test, and therefore, Count IV is ripe for adjudication.

### 2. National Indemnity's Motion to Dismiss Count IV

National Indemnity claims that Plaintiff lacks standing to bring Count IV because it seeks reformation disguised as declaratory relief. (D.I. 36 at 12). Plaintiff is essentially asking this Court to "revise the Transport Policy's existing liability coverage from $1 million to $5 million."

(*Id.*). National Indemnity argues that reformation relief may only be sought by a party to the contract. (*Id.* at 13) (citing *Starr v. Nationwide Mut. Ins. Co.*, 548 A.2d 22, 28 (Del. Ch. 1988); *Lawson v. Kellogg Marine, Inc.*, 2013 WL 1718022, at *2 (Del. Super. Ct. Apr. 18, 2013)). Since Plaintiff is not a party to the insurance contract between National Indemnity and Transport, it lacks standing to assert a reformation claim. (*Id.*).

On the merits, National Indemnity argues that neither federal nor Delaware law require insurers to include minimum limits of liability of $5 million in their policies with motor carriers. (D.I. 36 at 11). National Indemnity claims that the text of the federal regulations unambiguously places the duty on motor carriers, not insurers, to maintain mandated minimum amounts of financial responsibility as required by the Bus Regulatory Reform Act of 1982. (D.I. 36 at 11-12; D.I. 41 at 5-6). The text states, "The purpose of these regulations is to create additional incentives to *motor carriers* to maintain and operate their vehicles in a safe manner . . ." and requires only motor carriers to "obtain[] and [have] in effect the minimum levels of financial responsibility . . .'" (D.I. 41 at 6) (emphasis in original) (citing 49 C.F.R. §§ 387.27, 387.31). Delaware law governing minimum amounts of financial liability for motor carriers is identical to 49 C.F.R. Part 387. (*Id.* at 6 n.3) (citing 21 *Del. C.* § 4702).

National Indemnity claims federal courts, in interpreting the motor carrier regulations, have consistently held that reformation of an insurance policy to include an MCS-90B endorsement is improper because the duty is on motor carriers, rather than insurers, to maintain minimum levels of financial responsibility. (*Id.* at 9) (citing *Illinois Central R. Co. v. Dupont*, 326 F.3d 665, 668-69 (5th Cir. 2003); *Waters v. Miller*, 560 F. Supp. 2d 1318, 1323 (M.D. Ga. 2008) ("the failure to include the endorsement in the policy cannot give rise to the remedy [of] reformation of the policy deeming the endorsement to be a part of the policy.")). Courts have

11

also held that "'writing a MCS-90 endorsement into the policy . . . would create a perverse incentive' for motor carriers to avoid negotiating for the MCS-90 endorsement at the outset." (*Id.* at 10) (quoting *Grange Mut. Cas. Co. v. Pinson Trucking Co.*, 2013 WL 443619, at *5 (M.D. Ga. Feb. 5, 2013)).

Plaintiff argues that it has standing to "seek declaratory relief against National Indemnity as requested in the Complaint, even despite the fact that PIIC is not a party or third-party beneficiary to the National Indemnity Policies." (D.I. 39 at 15). Plaintiff claims, "An insurer may bring declaratory judgment claims against a separate insurer seeking a declaration that the separate insurer's policy conform to legally-mandated financial responsibility limits . . ." (*Id.* at 14). Plaintiff cites to *First Trenton Indemnity Co. v. Chrysler Ins. Co.,* in which the court held that a driver's insurer had standing to sue the vehicle owner's insurer for a declaration that the vehicle owner's insurer conform its policy to minimum coverage limits required by state law when the driver's insurer was not a party or third-party beneficiary to the contract. (D.I. 39 at 14-15) (citing 2010 WL 3740841, at *8 (D.N.J. Sept. 20, 2010)). Plaintiff also cites to *Progressive Express Ins. Co. v. Overdrive Specialized, Inc.*, in which the court held that an insurer could seek a determination regarding the parties' rights and obligations even when it was not a party to or a third-party beneficiary of the insurance policy because the parties' interests were adverse and a declaration would help clarify the parties' rights and obligations as to which insurer owed coverage. (*Id.* at 15-16) (citing 2014 WL 11512202, at *1 (N.D. Fla. Dec. 24, 2014)). Plaintiff claims that it has standing to request declaratory relief in this case because National Indemnity and PIIC's interests are similarly adverse. (*Id.* at 16). The amount PIIC is obligated to pay for judgments satisfied against Limo depends on how much National Indemnity

12

is obligated to cover. (*Id.*). Therefore, a declaration "would help establish the rights and obligations of National Indemnity and [Plaintiff]." (*Id.*).

Plaintiff also disagrees with National Indemnity's claim that neither federal nor Delaware law impose a duty on insurers to satisfy minimum financial responsibility requirements. (D.I. 39 at 11). Plaintiff claims that a motor carrier's insurer "must attest that the motor carrier has satisfied federal minimum financial responsibility requirements." (*Id.* at 12) (citing *Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co.*, 90 F. Supp. 3d 304, 321 (D.N.J. 2014)). Plaintiff argues that because National Indemnity issued policies with only $1 million in coverage, it failed to certify that the minimum limits of financial responsibility were met and violated its duty to provide the $5 million minimum liability limit required by state and federal law. (D.I. 39 at 13). Therefore, Plaintiff claims National Indemnity should be held liable for any judgment against Limo in the State Action, and Count IV should not be dismissed. (D.I. 39 at 13).

The Third Circuit summarized the requirements for standing as follows:

> Article III constitutional standing contains three elements: (1) the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 484-85 (3d Cir. 1998). The standing issue in this case is related to the first element—whether Plaintiff has a legally protected interested that would allow Plaintiff to reform the Transport Policy to include an MCS-90B endorsement.

13

Plaintiff cites to *Progressive Express* in order to show that an insurer has standing to request declaratory relief to compel coverage from another insurer. (D.I. 39 at 15). But in that case, the plaintiff wanted the court to interpret the language of the applicable insurance policies and find that it did not have to defend or cover its insured unless no other coverage applied. *Progressive Express*, 2014 WL 11512202, at *3. Here, there is no dispute that National Indemnity's policy covered the accident—National Indemnity has already exhausted its liability limits. (D.I. 41 at 12). Rather than ask this Court to interpret the existing terms of the policies, Plaintiff seeks to amend the Transport Policy to expand its liability limit from $1 million to $5 million. Therefore, Plaintiff essentially seeks reformation of the Transport Policy.

Reformation allows a court to rewrite a contract "to express the 'real agreement' of the parties involved" when a mutual or unilateral mistake occurs. *See Cerberus Int'l, Ltd. v. Apollo Mgmt, L.P.*, 794 A.2d 1141, 1151 (Del. 2002). Plaintiff does not have standing to seek reformation. Plaintiff is not a party to the contract and does not point to any regulation or statute that would grant standing to a third-party insurer to rewrite an MCS-90B endorsement into a separate insurer's policy.[1] *First Trenton,* which Plaintiff cites to supports its standing argument, does not support Plaintiff's claim because the applicable statute in that case provided a legal basis for reformation of an insurance contract. (D.I. 39 at 14) (citing *First Trenton,* 2010 WL 3740841, at *8). The statute states, "The provisions of this chapter, so far as may be requisite, shall be read into and deemed to form a part of any such policy." N.J. Stat. Ann. §45:21-3. The

---

[1] Plaintiff claims that insurers are responsible for "certifying" that motor carriers satisfy legal coverage requirements. (D.I. 39 at 12) (quoting *Carolina Cas. Ins. Co. v. Travelers Prop. Cas. Co.*, 90 F. Supp. 3d 304, 321 (D.N.J. 2014)). However, in *Carolina,* the court merely acknowledges that insurers certify a motor carrier's financial responsibility obligations through an MCS-90 endorsement attached to its insurance policy. *Id.* The case does not stand for the proposition that the insurers themselves must ensure that the motor carrier has adequate coverage.

regulations at issue here provide no such remedy to Plaintiff because federal and state law do not

place a duty on insurers to satisfy a motor carrier's minimum amount of financial responsibility.

The interpretation of regulations follows the same rules as statutory interpretation. *See,*

*e.g., Burns v. Barnhart,* 312 F.3d 113, 125 (3d Cir. 2002). If the text of the regulation is

unambiguous, "[T]he regulation then just means what it means—and the court must give it

effect, as the court would any law." *Kisor v. Wilkie*, 139 S.Ct. 2400, 2415 (2019).

The text of the Bus Regulatory Reform Act of 1982 and corresponding regulations place

the burden on motor carriers, not insurers, to provide the federally required minimum amounts of

liability. The purpose of the regulation "is to create additional incentives to motor carriers to

maintain and operate their vehicles in a safe manner . . ." 49 C.F.R. § 387.1. The regulation

states, "No motor carrier shall operate a motor vehicle transporting passengers until the motor

carrier has obtained and has in effect the minimum levels of financial responsibility as set forth

in § 387.33 of this subpart." 49 C.F.R. § 387.31. Delaware law adopts the same language as the

federal regulations regarding securing financial responsibility for motor carriers. *See* 21 *Del. C.*

§ 4702 ("Except as modified by this chapter, the State hereby adopts, as the laws of Delaware

governing motor carrier safety, the following parts of the Code of Federal Regulations, as

published and as subsequently amended: Title 49, Chapter III, Subchapter B, . . . Part 387 . . .").

It is clear from the text of the regulations that the federal and Delaware law place a duty

on motor carriers, not insurers, to maintain minimum amounts of financial responsibility. *See*

*Illinois Central R. Co.,* 326 F.3d at 669 ("Since the regulations requiring the MCS–90

endorsement are directed at the motor carrier, we do not read them as imposing a duty on the

insurer to make sure that non-exempt motor carriers secure the required insurance."); *Brewer v.*

*Maynard*, 2007 WL 2119250 at *2 (S.D.W. Va. July 20, 2007) ("A plain reading of the motor

carrier regulations indicates that they place the burden of compliance on the motor carrier not on the insurer.").

Because insurers have no duty to include an MCS-90B endorsement in their motor carrier policies or otherwise satisfy minimum amounts of financial responsibility for motor carriers under federal or Delaware law, Plaintiff cannot seek to reform the Transport Policy by raising its liability limit to $5 million. Plaintiff does not argue any other legal basis for reforming the Transport Policy to provide coverage beyond the $1 million policy limit. Therefore, Plaintiff has failed to state a claim that "National Indemnity is liable under the Transport Policy, as required under federal and Delaware law, for any judgment in the [State] Action." (D.I. 1 at ¶ 128). National Indemnity's Motion to Dismiss Count IV is granted.

### 3. National Indemnity's Motion to Dismiss Count V

National Indemnity also moves to dismiss Count V in which Plaintiff claims, "National Indemnity is liable to PIIC for contribution and/or indemnification for any judgment against [Limo] in the [State] Action that [] PIIC pays, because the Transport Policy covers the automobiles in the [State] Action." (D.I. 34; D.I. 1 at ¶ 136). National Indemnity argues Plaintiff lacks standing to assert an indemnification or contribution claim against National Indemnity. (D.I. 36 at 14). Because Plaintiff does not point to any positive law that would give Plaintiff a right to contribution or indemnification as a third-party to the contract, Delaware contract law controls. (*Id.*). Under Delaware contract law, a party needs to be a third-party beneficiary or party to the contract to have standing to seek contribution or indemnification. (D.I. 36 at 16) (citing *Broadway v. Allstate Prop. & Cas. Ins. Co.,* 2015 WL 4749176, at *5 (Del. Super. Ct. Aug 11, 2015); *Schmelz v. Martone*, 2019 WL 1977079, at *5 (Del. Super. Ct. May 2,

2019).  Since Plaintiff is neither, Plaintiff lacks standing for a contribution and/or indemnification claim.  (*Id.*).

Plaintiff argues that it can "recover from another insurer that failed to satisfy minimum financial responsibility requirements, regardless of whether the obliged insurer is a party to, or third-party beneficiary of, the other insurer's policy."  (D.I. 39 at 19).  Plaintiff argues that National Indemnity failed to satisfy minimum financial responsibility requirements for motor carriers in its policy, and therefore, is responsible for any judgment against Limo that Plaintiff must pay.  Plaintiff claims it has a right to "seek recovery from the insurer ultimately responsible for satisfying the judgment—*i.e.*, National Indemnity."  (D.I. 39 at 18-19).  (citing *Am. Alternative Ins. Co. v. Sentry Select Ins. Co.*, 176 F. Supp. 2d 550, 556 (E.D. Va. 2001)).

"In the insurance context, the right to contribution among insurers arises in two basic circumstances: 1) an insurer of a joint tortfeasor has paid all, or greater than its share, of a loss;" or "2) a single insured is covered by concurrent or 'double' insurance, and one insurer paid all, or greater than its share, of a loss." 15 *Couch on Insurance*, § 217:4 (3d ed. 2021).  "Where one of two or more potentially liable insurers pays a loss, whether in satisfaction of a judgment or in settlement of a claim, it may then seek payment from the other insurers of their fair share of the loss."  *Id.*  "An insurer's right to contribution from a second insurer can rise no higher than the right of the insured of the second insurer to compel coverage of the loss."  *Id.*

Indemnification, which is distinct from contribution, is an "equitable or contractual device[] for placing the burden for a loss on the party ultimately liable or responsible for it and by whom it should have been discharged. . . The person seeking indemnification does so in his or her own right . . ." *Id.* at § 217:5.

17

I agree with National Indemnity that Plaintiff lacks standing for contribution or indemnification. Plaintiff only has a right to recover from a second insurer up to the amount "the insured of the second insurer [can] compel coverage of the loss." *Id.* at § 217:4. Here, the parties do not dispute whether National Indemnity's coverage applies to the accident, but rather whether National Indemnity's policy violated federal and state law. As previously discussed, National Indemnity, as an insurer, did not have a duty to provide minimum liability limits required by motor carriers. National Indemnity has already paid out its liability limit of $1 million under the Transport Policy, thus satisfying its obligations to the insured. (*See* D.I. 1 at ¶ 59). Plaintiff cannot seek contribution or indemnification from National Indemnity for more than National Indemnity was legally and contractually obligated to pay to its insured. Moreover, Plaintiff has not actually made any payments for a judgment against Limo for which it can seek contribution. Therefore, Plaintiff has failed to state a claim for contribution or indemnification, and I grant National Indemnity's motion to dismiss Count V.

### 4.  National Indemnity's Motion to Dismiss Counts II and III

Plaintiff does not contest National Indemnity's Motion to Dismiss Counts II and III to the extent they relate to National Indemnity. Count II requests declaratory relief that the MCS-90B Endorsement applies only to Limo, and Count III requests declaratory judgment that PIIC has no duty to defend. (D.I. 1 at ¶¶ 113-122). Neither claim directly implicates National Indemnity. Whether the MCS-90B Endorsement applies and whether PIIC has a duty to defend are disputes between Plaintiff and its insured. Besides Plaintiff's claims for contribution and indemnification, which I have dismissed, Plaintiff does not explain how Counts II and III individually implicate National Indemnity. Therefore, Plaintiff has failed to state a claim upon which relief can be

granted, and National Indemnity's Motion to Dismiss is granted with regards to Counts II and III "to the extent they address any purported obligations of National Indemnity." (D.I. 36 at 17).

### B.  Jolly Trolley Defendants' Motion to Stay

Jolly Trolley Defendants move to stay the proceedings. (D.I. 30).  Applying the independent claim test, they argue that this Court should exercise its discretion to decline to hear the claims under the *Brillhart* doctrine because all of Plaintiff's legal claims are dependent on its declaratory claims. (D.I. 31 at 16).  They argue the legal claims are dependent because "all of PIIC's legal claims would be moot if this Court (or Delaware Superior Court) declares that PIIC has no obligation to satisfy any judgment under the policy it issued to Jolly Trolley Limousine and Transit U." (D.I. 31 at 19).

Plaintiff disagrees with Jolly Trolley Defendants' definition of independent claims. Plaintiff argues that its legal claims are independent of the declaratory relief it seeks because the legal claims "would continue to exist if the request for a declaration simply dropped from the case," and therefore the *Colorado River* doctrine should apply. (D.I. 37 at 16, 19) (citing *Lukoil*, 2017 WL 6450482, at *8).

The Third Circuit has adopted the independent claim test in cases where a complaint contains claims for both legal and declaratory relief. *Rarick*, 852 F.3d at 229.  The test determines whether the *Brillhart* doctrine or *Colorado River* abstention doctrine will govern how much discretion the court has to decline to exercise jurisdiction. *Id.*  Under the test, "a district court must [first] determine whether the legal claims are independent of the declaratory claims." *Id.*

I agree with Plaintiff's definition of independent claims. A claim is independent when it "could stand alone in federal court—both jurisdictionally and substantively—irrespective of the declaratory claim." *Id.* at 228 (citing *R.R. St. & Co.*, 569 F.3d at 715).  Legal claims are

substantively independent of declaratory claims when they "can be adjudicated without the requested declaratory relief,'" or in other words, the claims would continue to exist if "the request for a declaration simply dropped from the case." *Cont'l Cas. Co. v. Westfield Ins. Co.*, 2017 WL 1477136, at *5 (E.D. Pa. Apr. 24, 2017) (citations omitted). "When the legal claims are independent, courts generally will not decline the declaratory judgment action in order to avoid piecemeal litigation." *Rarick*, 852 F.3d at 228 (citing *R.R. St. & Co.*, 569 F.3d at 715-16).

Plaintiff has three surviving legal claims in this case: "(1) alter-ego liability against the Hastings (Count I); (2) fraud against all Moving Defendants (Count VI); [] (3) tortious interference with contractual relations against the Hastings (Count VII)." (D.I. 37 at 16). Plaintiff seeks declaratory relief for:

> (1) a declaration that the MCS-90B Endorsement in the PIIC Policy does not apply to any person or entity aside from Limo, including without limitation Transit (Count II); (2) a declaration that PIIC has no duty to defend Limo and Transit in the State Action (Count III); and (3) a declaration that National Indemnity—not a party to the State Action—failed to satisfy federal and Delaware minimum financial responsibility requirements in the policies issued to Bus and Transport (including the policy that undisputedly covers the vehicles involved in the October 1, 2016 accident) (Count IV).

(*Id.*).

Plaintiff's legal claims are independent of its declaratory relief claims because they could stand alone in federal court both jurisdictionally and substantively. The claims are jurisdictionally independent because there is diversity of citizenship between PIIC, a citizen of Pennsylvania, and Defendants, citizens of Delaware, and the amount in controversy exceeds $75,000. (*Id.* at ¶¶ 10-22).

Substantively, Plaintiff's claims for alter-ego liability, fraud, and tortious interference can all stand alone in federal court. They can be resolved without having to decide the remaining declaratory relief claims: that the MCS-90B Endorsement does not apply to Limo and that PIIC

20

has no duty to defend Limo and Transit. In other words, "the requested declaratory relief is not a prerequisite to the resolution of [the legal] claims." *R.R. St. & Co.*, 569 F.3d at 717. The fact that the declaratory relief and legal claims relate to the same underlying legal obligations is not dispositive for establishing substantive independence. *Cont'l Cas. Co.*, 2017 WL 1477136, at *5.

When the legal claims are independent, the *Colorado River* doctrine, rather than the *Brillhart* doctrine, applies and courts have a "virtually unflagging obligation" to hear the case except in exceptional circumstances. *Rarick*, 852 F.3d at 229. As a threshold issue, courts first consider whether the federal and state proceedings are parallel. *Ryan*, 115 F.3d at 196. Concurrent state and federal actions are parallel when they involve the same parties and claims. *Id.*

After granting National Indemnity's Motion to Dismiss, the parties are the same, and the only remaining counts are virtually identical to the counts in the State Action. (D.I. 37 at 19). These cases are parallel. Courts can only stay parallel proceedings under certain exceptional circumstances and apply a six-factor test to determine whether to exercise jurisdiction. *Supra*, at 7.

Jolly Trolley Defendants argue that the factors weigh in favor of a stay because of the lack of proceedings in federal court in comparison to the "extensive litigation in the state court" and the absence of the State Action plaintiffs in federal court. (D.I. 31 at 24).

Plaintiff argues that the factors weigh in favor of exercising jurisdiction. (D.I. 37 at 19). Plaintiff's arguments are generally presented as though National Indemnity remains in the case, and thus are less helpful than they might be. Plaintiff claims no *res* is at issue in this case, both the state and federal forum are convenient to the parties, there is no federal policy that supports trying the types of claims at issue here in state court, the claims involve the interpretation and

21

application of federal law, and there is no allegation that the state forum is inadequate. (D.I. 37 at 20-21).

The application of the six-factor test weighs in favor of not staying the case. The first factor, which court first assumed jurisdiction over the property, does not apply because no *res* is at issue in this case. It is therefore neutral.

The second factor, the inconvenience of the federal forum, does not weigh in favor of abstention because the federal forum and state court are equally convenient since they are both located in Delaware. It is therefore neutral.

The third factor, the desirability of avoiding piecemeal litigation, applies when there is a "strongly articulated *congressional policy* against piecemeal litigation in the specific context of the case under review." *Ryan*, 115 F.3d at 198 (emphasis in original). "The presence of garden-variety state law issues has not . . . been considered sufficient evidence of a congressional policy to consolidate multiple lawsuits for unified resolution in the state courts." *Id.* Plaintiff's claims for alter-ego liability, fraud, and tortious interference with contractual relations can be fairly characterized as garden-variety state law claims. *See, e.g., Nihon Tsushin Kabushiki Kaisha v. Davidson*, 595 F. Supp. 2d 363, 370 (D. Del. 2009) (state law breach of contract and fraud claims are garden-variety state law issues). Moreover, neither party has pointed to a congressional policy against piecemeal litigation which would apply to these types of claims. Therefore, the third factor weighs in favor of exercising jurisdiction.

The fourth factor, the order in which jurisdiction was obtained, weighs in favor of abstention because Plaintiff first filed a motion to intervene in the State Action eight days before filing its complaint in federal court. (D.I. 40 at 2). The State Action had also been ongoing since

2016 and the parties have already proceeded with discovery in the underlying tort suit. (D.I. 31 at ¶¶ 1, 6).

The fifth factor, whether federal or state law controls, weighs in favor of abstention. Absent Counts IV and V regarding the MCS-90B endorsement, which I have dismissed, the remaining claims for alter-ego liability, fraud, and tortious interference are state law claims. The state court is better versed in Delaware law than I am.

The sixth and final factor, whether the state court will adequately protect the interests of the parties, is neutral. "[T]he mere fact that the state forum is adequate does not counsel in favor of abstention, given the heavy presumption the Supreme Court has enunciated in favor of exercising federal jurisdiction. Instead, this factor is normally relevant only when the state forum is inadequate." *Ryan,* 115 F.3d at 200. There is every reason to believe the state court will adequately protect the interests of the parties, and no party argues to the contrary, so this factor is neutral.

On the whole, the factors do not weigh strongly in favor of staying the proceedings and do not amount to exceptional circumstances which overcome this Court's "virtually unflagging obligation" to exercise jurisdiction under the *Colorado River* doctrine. It is true that the State Action has been ongoing for years, and Plaintiff first moved to intervene in the State Action. The state court is also better suited to address matters of Delaware law, which is now the only law at issue. But the other factors are neutral or weigh in favor of exercising jurisdiction. Therefore, Jolly Trolley Defendants' Motion to Stay is denied.

## C. CONCLUSION

For these reasons, I grant National Indemnity's Motion to Dismiss regarding Counts IV and V, and to the extent they apply to National Indemnity, Counts II and III also.  (D.I. 34).  I deny Jolly Trolley Defendants' Motion to Stay for the remaining counts.[2]  (D.I. 30).

---

[2] The motion to stay was filed about eight months ago.  I do not now consider whether I should enter a discretionary stay of the sort that I can consider in any case.  In addition, Plaintiff may want to consider whether its reasons for bringing a duplicative (as it turns out) suit in federal court are as compelling as they seemed at the time the suit was filed.  Plaintiff is requested to submit a status report within one week if it wants to go forward with this litigation, and, if so, to explain how it expects to coordinate this case with the State Action.  In the meantime, Defendants should comply with the deadlines for answering the complaint.